1  SEYFARTH SHAW LLP
   Geoffrey C. Westbrook (SBN 281961)
2  gwestbrook@seyfarth.com
   Jeffrey A. Nordlander (SBN 308929)
3  jnordlander@seyfarth.com
   400 Capitol Mall, Suite 2350
4  Sacramento, CA  95814-4428
   Telephone:  916 498-7033
5  Facsimile:   916-558-4839

6  Attorneys for Plaintiff
   VIBRANTCARE REHABILITATION, INC.
7

8                   **IN THE UNITED STATES DISTRICT COURT FOR THE**

9                              **EASTERN DISTRICT OF CALIFORNIA**

10                                      **SACRAMENTO DIVISION**

11 | VIBRANTCARE REHABILITATION, INC., | Case No.
12 | Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
13 | vs. |
14 | GOLDEN BEAR PHYSICAL THERAPY SPORTS INJURY CENTER, INC., GOLDEN BEAR PT PARTNERS, LLC, John and Janes Does 1 through 10. | **DEMAND FOR JURY TRIAL**
15 | |
16 | Defendants. |

# COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff VibrantCare Rehabilitation, Inc. ("VibrantCare"), for its Complaint for Damages and Injunctive Relief against Defendants Golden Bear Physical Therapy Sports Injury Center, Inc. ("Golden Bear Inc.") and Golden Bear PT Partners, LLC ("Golden Bear LLC") (collectively, "Golden Bear"), states as follows:

## INTRODUCTION

1. VibrantCare is a leading provider of outpatient physical and occupational therapy services in the Western United States. VibrantCare operates 42 locations, including several locations in the Sacramento area, where its employees offer a range of physical and occupational therapy services to patients seeking medical care.

2. One of the key drivers of VibrantCare's success is its ability to attract and retain qualified physical and occupational therapists for its workforce. The United States has a shortage of physical and occupational therapists, such that the demand for licensed practitioners among VibrantCare and other providers is incredibly high.

3. Just as importantly, VibrantCare competes with other physical and occupational therapy providers for patients and referrals. Towards that end, VibrantCare has developed an extensive—and highly confidential—network of vendors, referral sources, contacts, and business strategies to develop and retain a base of patients and referral sources.

4. Golden Bear is a direct competitor of VibrantCare in the physical and occupational therapy industry. Golden Bear operates outpatient physical and occupational therapy clinics and often competes for the same physical and occupational therapists and patients and referrals as VibrantCare.

5. In 2019, Golden Bear, backed a private equity group, Shore Capital Partners, LLC, began aggressively expanding in the Western United States.

6. On information and belief, in its quest for profits, Golden Bear crossed the line of legitimate competition, and used VibrantCare's confidential and trade secret information to unlawfully compete with and harm VibrantCare.

7. Golden Bear accomplished this in part through Kiran Deol ("Deol"), who worked for VibrantCare as its Director of Recruiting until she resigned in January 2020 and joined Golden Bear.

8. As Director of Recruiting for VibrantCare, Deol oversaw VibrantCare's recruiting operations in multiple states. Given her senior role, Deol had special access to VibrantCare's confidential and trade secret information regarding its recruiting strategies, database of physical therapy candidates, vendor and referral network, patient scheduling system, business strategies, costs and payment structure, margins, and other highly sensitive and proprietary information.

9. In January 2020, Golden Bear hired Deol to be its new Director of Talent Acquisition. This was a new position created to drive recruiting and hire additional physical and occupational therapists needed for Golden Bear's expansion.

10. On information and belief, Golden Bear hired Deol in part because she had access to and knowledge of VibrantCare's confidential and trade secret information, and Golden Bear knew it could use that information to unlawfully compete against VibrantCare.

11. On January 19, 2020, Deol gave VibrantCare notice of her resignation effective January 31, 2020. Deol concealed from VibrantCare that she had accepted a position with Golden Bear, in order to retain access to VibrantCare's confidential and trade secret information until her last of day of employment.

12. For her own and the benefit of Golden Bear, Deol misappropriated a significant amount of VibrantCare's confidential, proprietary, and trade secret information before her resignation. Specifically, Deol misappropriated information pertaining to: (1) the number of locations VibrantCare has opened, the number of physical therapists VibrantCare has recruited, the frequency at which VibrantCare hires physical therapists, and the volume of referrals VibrantCare secures for its locations; (2) a list of over 100 physical therapy candidates with whom Deol was in contact with on behalf of VibrantCare, along with the contact information for those candidates; (3) an analysis of VibrantCare's referral sources and setting forth VibrantCare's business strategy in working with those sources in the future; (4) a report detailing the percentages of cancelled appointments at VibrantCare locations in several states (a key metric driving the efficiency of VibrantCare's operations), and discussing VibrantCare's strategy to increase scheduling efficiency in the future; and (5) information regarding VibrantCare's relationship with its vendors, including recruiting vendors and its outside immigration counsel.

13.     Deol officially began working for Golden Bear on or around February 3, 2020.

14.     Golden Bear used the information Deol stole from VibrantCare to unlawfully compete with VibrantCare to enter into and expand Golden Bear's reach into markets where VibrantCare does business. For example, within weeks of joining Golden Bear, Deol disclosed the identity of VibrantCare's outside immigration counsel to Golden Bear, and Golden Bear contacted VibrantCare's outside immigration counsel to obtain his services.

15.     On information and belief, Golden Bear used additional confidential and/or trade secret stolen from VibrantCare, including, but not necessarily limited to, Deol's knowledge of VibrantCare's recruiting strategies, including wage rates for physical and occupational therapists; VibrantCare's business strategies for working with foreign-trained physical and occupational therapists; Deol's knowledge of VibrantCare's patient referral sources; and Deol's knowledge of VibrantCare's vendor relationships, including recruiting vendors. On information and belief, Golden Bear, including through its new Director of Talent Acquisition, unlawfully used VibrantCare's confidential and trade secret information to rapidly expand its operations and patient referral sources.

16.     Golden Bear's acts have harmed VibrantCare, including the loss of value of confidential and/or proprietary information, loss of goodwill, and damages to its ability to successfully market its goods and services.

**PARTIES**

17.     VibrantCare Rehabilitation, Inc. is a California corporation, organized and existing under the laws of the State of California.

18.     Golden Bear Inc. is a California corporation, organized and existing under the laws of the State of California, with its principal place of business in Modesto, California.

19.     Golden Bear LLC is a Delaware LLC, formed and existing under the laws of the Delaware, which engages in continuous and systematic business operations in California. On information and belief, Golden Bear LLC acquired Golden Bear Inc. in 2019 and controls its operations.

**JURISDICTION AND VENUE**

20.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 as this matter arises under the Defend Trade Secrets Act of 2016, codified at 18 U.S.C. § 1836 *et seq.*, with jurisdiction being

1  expressly conferred in accordance with 18 U.S.C. § 1836(c). The Court has supplemental jurisdiction
2  over all related claims herein in accordance with 28 U.S.C. § 1367.

3      21.    This Court has personal jurisdiction over Defendants. Golden Bear Inc. is a California
4  corporation with its principal place of business in California, and it engages in regular business in
5  California and this District. Golden Bear LLC engages in continuous and systematic business operations
6  in California, and VibrantCare's claims arise from Golden Bear LLC's unlawful acts in California and
7  this District.

8      22.    Venue is proper in this district under 28 U.S.C. § 1391(b)(1) as Golden Bear Inc. and
9  Golden Bear LLC reside within this district. Venue is also proper in this district under 28 U.S.C.
10 1391(b)(2) as some or all of Golden Bear Inc. and Golden Bear LLC's tortious acts were committed in
11 this District and have caused harm to VibrantCare in this District.

## EVENTS GIVING RISE TO THIS ACTION

13     23.    VibrantCare is a leading provider of outpatient physical and occupational therapy
14 services in California and the Western United States. VibrantCare's physical and occupational therapists
15 provide services to patients recovering from surgeries, strokes, amputations, traumatic injuries, or
16 otherwise needing medical care. The services that VibrantCare provides through its team of therapists
17 help patients return to work or simply regain mobility for their daily lives. VibrantCare's carefully-
18 developed network of therapists, vendors, providers, business methods, and strategies for providing
19 patient care make VibrantCare a leading outpatient therapy provider.

20     24.    The United States already has a shortage of qualified physical and occupational
21 therapists. As the population of the United States ages, the need for qualified therapists is expected to
22 grow exponentially over the next decade—indeed, the Bureau of Labor Statistics projects that the needs
23 for physical and occupational therapists will outpace almost every other profession in the coming years.
24 As a result, the competition among providers like VibrantCare to hire and retain therapists is significant.

25     25.    Beyond competition for qualified therapists, the competition among providers like
26 VibrantCare for patients and referral sources is also significant. VibrantCare makes substantial,
27 continuous investments to develop its proprietary and trade secret business models, patient scheduling

systems, network of vendor contacts, referral sources, and pricing and business strategies that allow it to grow and maintain its business.

26. On information and belief, Golden Bear LLC was formed in 2019 as a partnership between a private equity group, Shore Capital Partners LLC ("Shore Capital"), and Golden Bear Inc. Shore Capital had expressed interest in acquiring VibrantCare in the past, but VibrantCare rebuffed Shore Capital's efforts.

27. Beginning in 2019, Golden Bear embarked on an aggressive campaign of expansion, opening new locations, hiring additional physical and occupational therapists, and acquiring already existing physical therapy practices. In April 2019, Golden Bear operated 18 clinics; by April 2022, that number had grown to 130 clinics.

**VibrantCare Takes Reasonable Measures To Protect Its Trade Secret And Confidential Information**

28. In order to accomplish their duties, specific employees of VibrantCare, including Deol, receive varying levels of access to and training on VibrantCare's confidential, proprietary, and trade secret information, including:

- Therapist hiring and retention strategies, including strategies for which third-party sources and vendors are most successful in placing qualified candidates at VibrantCare;
- The identity of qualified current or former VibrantCare physical candidates;
- Marketing plans and promotional strategies for VibrantCare;
- Pricing strategies, including terms and conditions of agreements with third-parties, profit margins, and vendor pricing discounts;
- VibrantCare's vendor and referral network and patient scheduling system; and
- Competitive strategies, including those against Golden Bear.

29. VibrantCare took reasonable steps to make sure that the above-referenced information was kept secure, including by requiring all employees with access to such information to enter into agreements requiring them to keep that information confidential, restricting access to such information with electronic encryption, and requiring anyone accessing such information to use unique login credentials and passwords issued by VibrantCare.

5
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

30. On March 5, 2018, in consideration of her employment at VibrantCare and access to its confidential information and trade secrets, Deol executed the VibrantCare Employee Agreement ("the Agreement"). A true and correct copy of the Agreement is attached as **Exhibit A**.

31. The Agreement defines "Confidential Information" as:

> "[A]ll information in any way concerning the activity, business or affairs of the Company or any of the customers or clients of the Company, including, without limitation, information which concerns or constitutes a trade secret of the Company, all sales and financial information concerning the Company, all policies and procedures of the Company, all pricing information about the products or services offered by the Company, all information concerning projects in research and development or marketing plans for any services, product or projects of the Company, all employee lists or other information identifying the customers, clients, referral sources, and payors of the Company, all information in any way concerning the activities, business, or affairs of any customers, clients, referral sources, and payors of the Company, which are furnished to you by the company or any of its agents, customers or clients, or otherwise acquired or developed by you during the course of your employment, and all information concerning the consultants or vendors used by the Company.

(*Id*. § 1.)

32. Deol specifically agreed not to disclose VibrantCare's "Confidential Information" without authorization:

> In consideration for your employment and the compensation and benefits offered to you in connection therewith, you will, during your employment with the Company and at all times thereafter, treat all confidential material (as hereinafter defined) of the company confidentially. You will not, without the prior written consent of the President of the Company, disclose such confidential material, directly or indirectly, to any party who at the time of such disclosure is not an employee or agent of the Company, or remove from the premises of the Company any notes or records relating thereto, copies thereof, or any property, provided that confidential information may be taken home when you plan to work at home if returned upon the completion of such work.

(*Id*. § 1.)

**Golden Bear Enlists Deol to Breach Her Fiduciary Obligations, Misappropriate VibrantCare's Confidential And Trade Secret Information, and Violate Her Confidentiality Obligations**

33. Golden Bear offered Deol cash and equity compensation significantly in excess of what Deol earned at VibrantCare. On information and belief, Golden Bear created an entirely new director-level position, then encouraged and empowered Deol to steal VibrantCare's confidential and trade secret information on Golden Bear's behalf by offering her this compensation package, contingent upon her taking VibrantCare's information for the benefit of Golden Bear. Deol was directly compensated by Golden Bear to expand Golden Bar's business into the markets where VibrantCare operated using

VibrantCare's confidential and trade secret information.

34. After Deol's last day of employment and VibrantCare's discovery that she had taken a recruiting position with Golden Bear, VibrantCare conducted an investigation into Deol's activities on her VibrantCare-issued e-mail and electronic devices. That investigation discovered that Deol had misappropriated a significant volume of VibrantCare's confidential and trade secret information by e-mailing it to her personal e-mail shortly before her resignation.

35. For example, on January 28, 2020, just days before her resignation was effective, Deol received a highly confidential analysis prepared by other VibrantCare employees analyzing VibrantCare's referral sources and setting forth VibrantCare's business strategy in working with those sources in the future. Deol forwarded that email and analysis to her personal e-mail account.

36. The same day, Deol received a highly confidential report detailing the percentages of cancelled appointments at VibrantCare locations in several states (a key metric driving the efficiency of VibrantCare's operations), and discussing VibrantCare's strategy to increase scheduling efficiency in the future. Those e-mails included sensitive patient information. Deol also forward that e-mail and report to her personal email account.

37. Subsequent investigation revealed additional acts of misappropriation by Deol, including her theft of a list over 100 physical therapy candidates with whom Deol was in contact on behalf of VibrantCare, along with the contact information for those candidates

38. In the course of its investigation, VibrantCare also learned that, after her resignation, Deol reached out to vendors used by VibrantCare to perform work on behalf of Golden Bear. The identity of those vendors was highly-confidential information because the vendor carried out aspects of VibrantCare's business strategy and for which Deol agreed not to use or disclose without authorization.

39. Further, on information and belief, Deol contacted recruiting candidates while she was still employed by VibrantCare and discouraged those individuals from accepting employment with VibrantCare, so that she could later solicit those candidates on behalf of Golden Bear. On information and belief, Golden Bear knew of and encouraged these activities by Deol.

40. Deol and Golden Bear redirecting recruiting candidates to Golden Bear, while she was an employee of VibrantCare, harmed VibrantCare. Golden Bear's conduct prevented VibrantCare from

hiring qualified physical therapy candidates that would have done work at VibrantCare facilities and generated revenue and profit for VibrantCare.

41. On information and belief, Golden Bear and Deol's conduct also caused VibrantCare to have to incur additional costs and expenses to identify and recruit replacements for the candidates that were redirected from VibrantCare to Golden Bear. VibrantCare would not have incurred these additional costs and expenses but for Deol, with Golden Bear's knowledge and assistance, redirecting qualified candidates from VibrantCare to Golden Bear.

42. In all, Golden Bear's use of the confidential and trade secret information Deol stole harmed VibrantCare, including the loss of value of confidential and/or proprietary information, loss of goodwill, and damages to its ability to successfully market its goods and services.

43. On February 14, 2020, counsel for VibrantCare sent a letter to Deol reminding her of her obligations to VibrantCare, notifying Deol that VibrantCare was aware of her misappropriation of its confidential and trade secret information, and demanding that Deol not take any steps to use, access, or alter that information until further notice. (*See* February 14, 2020 Letter attached hereto as **Exhibit B**.)

44. On February 19, 2020, Golden Bear responded, on behalf of itself and Deol. While Golden Bear claimed that it had not received any of VibrantCare's information, troublingly, it also claimed that it had not "retained" any such information. (*See* February 19, 2020 Letter attached hereto as **Exhibit C.**)

45. Perhaps even more concerning, Golden Bear's correspondence claimed that Deol had destroyed all information related to VibrantCare in her personal e-mail account, and that Deol had done so before receiving VibrantCare's February 14th correspondence. Put differently, either (1) Deol destroyed critical electronic evidence that would show her use of VibrantCare's confidential and trade secret information, or (2) if Golden Bear is to be believed, Deol sent VibrantCare's confidential and trade secret information to herself as recently as January 28th, then had a completely unprompted change of heart and deleted that information within two weeks, but before receiving VibrantCare's demand letter.

46. In further correspondence, counsel for Golden Bear claimed that it would conduct a forensic analysis of Deol's personal computer to ensure that none of VibrantCare's information

1  remained on it. Yet Golden Bear only offered to search Deol's devices for search terms determined by *Golden Bear*, and would not commit to any timeframe for its search. And Golden Bear also offered to search Deol's business computer for such information, despite earlier indicating that Deol had never shared VibrantCare's confidential and trade secret information with Golden Bear. Golden Bear's offer was made on March 23, 2020, yet no such report of a forensic analysis has been produced.

47. On April 16, 2020, VibrantCare filed suit against Deol in the United States District Court for the Eastern District of California, Case No. 2:20-cv-00791-MCE-AC, alleging causes of action for (1) breach of contract; (2) unfair competition; (3) breach of fiduciary duty; (4) violation of the Defend Trade Secrets Act; and (5) violation of the California Uniform Trade Secrets Act. This action is currently pending before United States District Court Judge Morrison C. England, Jr.

48. All told, Golden Bear is causing, threatening, and/or will continue to cause or threaten significant irreparable harm to VibrantCare, including the loss of value of confidential and/or proprietary information, loss of goodwill, and damages to its ability to successfully market its goods and services.

**COUNT I**

**<u>VIOLATION OF THE DEFEND TRADE SECRETS ACT</u>**

49. VibrantCare hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 46.

50. VibrantCare's trade secret information is not available to the general public and is closely guarded by VibrantCare. VibrantCare does not disclose such information in order to maintain a competitive advantage over competitors.

51. VibrantCare's information is a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1833, et seq. ("DTSA"), because the information is not generally known outside of VibrantCare's business, VibrantCare has taken reasonable measures to guard the secrecy of the information, the information is of great value to VibrantCare and its competitors, VibrantCare invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because VibrantCare continuously uses the information in its business. The trade secret information that Golden Bear, by and through Deol, misappropriated from VibrantCare is used in interstate commerce.

52. By and through, Deol, and, on information and belief, other of its employees, Golden Bear misappropriated trade secret information belonging to VibrantCare, and used that information to unlawfully compete against VibrantCare.

53. Unless restrained, Golden Bear will continue to use, divulge, disclose, acquire and/or otherwise misappropriate VibrantCare's trade secret information. Furthermore, actual or threatened misappropriation of trade secret information may be enjoined under the DTSA. Injunctive relief against Golden Bear is therefore appropriate.

54. VibrantCare requests an order enjoining Golden Bear from using VibrantCare's trade secret information and from disclosing VibrantCare's trade secret information to anyone not authorized to receive it.

55. VibrantCare further requests an order requiring Golden Bear to return any and all VibrantCare's trade secret information to VibrantCare.

56. Finally, Golden Bear's misappropriation of VibrantCare's trade secret information has been willful and malicious, and VibrantCare has incurred significant damages as a result of Golden Bear's misappropriation.

57. Golden Bear's actions have also damaged VibrantCare's goodwill, reputation, and legitimate business interests.

58. VibrantCare is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Golden Bear's wrongfully misappropriation of VibrantCare's trade secret information.

## COUNT II

### VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT

59. VibrantCare hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 46.

60. VibrantCare's trade secret information is not available to the general public and is closely guarded by VibrantCare. VibrantCare keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

61. VibrantCare's trade secret information is a trade secret under the California Uniform

Trade Secrets Act, Cal. Civ. Code § 3426 et seq. ("CUTSA"), because the information is not generally known outside of VibrantCare's business, the information is not generally known by employees and others involved in VibrantCare's business, VibrantCare has taken reasonable measures to guard the secrecy of the information, the information is of great value to VibrantCare and its competitors, VibrantCare invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because VibrantCare continuously uses the information in its business.

62.  By and through, Deol, and, on information and belief, other of its employees, Golden Bear misappropriated trade secret information belonging to VibrantCare, and used that information to unlawfully compete against VibrantCare.

63.  Unless restrained, Golden Bear will continue to use, divulge, disclose, acquire and/or otherwise misappropriate VibrantCare's trade secret information. Furthermore, actual or threatened misappropriation of trade secret information may be enjoined under the CUTSA. Injunctive relief against Golden Bear is therefore appropriate.

64.  VibrantCare requests an order enjoining Golden Bear from using VibrantCare's trade secret information and from disclosing VibrantCare's trade secret information to anyone not authorized to receive it.

65.  VibrantCare further requests an order requiring Golden Bear to return any and all VibrantCare's trade secret information to VibrantCare.

66.  Finally, Golden Bear's misappropriation of VibrantCare's trade secret information has been willful and malicious, and VibrantCare has incurred significant damages as a result of Golden Bear's misappropriation.

67.  Golden Bear's actions have also damaged VibrantCare's goodwill, reputation, and legitimate business interests.

68.  VibrantCare is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Golden Bear's wrongfully misappropriation of VibrantCare's trade secret information.

## COUNT III

### UNFAIR COMPETITION

69. VibrantCare hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 46.

70. On information and belief, Deol, at Golden Bear's behest, contacted recruiting candidates while she was still employed by VibrantCare and discouraged those individuals from accepting employment with VibrantCare, so that she could later solicit those candidates on behalf of Golden Bear.

71. Golden Bear and Deol's conduct in redirecting recruiting candidates to Golden Bear, while she was still an employee of VibrantCare, harmed VibrantCare. Deol's conduct prevented VibrantCare from hiring qualified physical therapy candidates that would have done work at VibrantCare facilities and generated revenue and profit for VibrantCare.

72. On information and belief, Golden Bear and Deol's conduct also caused VibrantCare to have to incur additional costs and expenses to identify and recruit replacements for the candidates Deol redirected from VibrantCare to Golden Bear. VibrantCare would not have incurred these additional costs and expenses but for Golden Bear and Deol redirecting qualified candidates from VibrantCare to Golden Bear.

73. VibrantCare also suffered harm because it paid Deol salary and benefits while she, although nominally an employee of VibrantCare, was secretly working for the benefit of Golden Bear.

74. Golden Bear's acts of unfair competition were willful, malicious, and intentional.

75. VibrantCare actual, incidental, punitive, compensatory, and consequential damages based on Golden Bear's conduct in an amount to be determined at trial.

## COUNT IV

### AIDING AND ABETTING DEOL'S BREACH OF FIDUCIARY DUTY

76. VibrantCare hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 46.

77. As an employee of VibrantCare, Deol had a fiduciary duty of loyalty to act in the best interests of VibrantCare during the course of her employment. Golden Bear knew Deol owed fiduciary duties to VibrantCare, by virtue of her high-level position at VibrantCare—indeed, when Deol joined

Golden Bear, Golden Bear hired her into a "director" level position.

78. Deol breached her fiduciary duty to VibrantCare by, among other things, on information and belief, discouraging hiring candidates from accepting employment with VibrantCare so that Deol could later solicit their employment at Golden Bear. On information and belief, Golden Bear encouraged Deol to breach her fiduciary duties to VibrantCare by offering her offering her cash and stock based compensation contingent on her redirecting physical therapy candidates to Golden Bear.

79. Deol's conduct, at the behest of Golden Bear, in redirecting recruiting candidates to Golden Bear, while she was still an employee of VibrantCare, harmed VibrantCare. Competition among providers like VibrantCare and Golden Bear to hire and retain therapists is significant. Golden Bear and Deol's conduct prevented VibrantCare from hiring qualified physical therapy candidates that would have done work at VibrantCare facilities and generated revenue and profit for VibrantCare.

80. On information and belief, Golden Bear and Deol's conduct also caused VibrantCare to have to incur additional costs and expenses to identify and recruit replacements for the candidates Deol redirected from VibrantCare to Golden Bear. VibrantCare would not have incurred these additional costs and expenses but for Deol redirecting qualified candidates from VibrantCare to Golden Bear.

81. VibrantCare also suffered harm because it paid Deol salary and benefits while she, although nominally an employee of VibrantCare, was secretly working for the benefit of Golden Bear. Deol's actions, taken while still an employee of VibrantCare, were a breach of her fiduciary duties, including her duty of loyalty.

82. But for Golden Bear's conduct, Deol would not have breached her fiduciary duties to VibrantCare.

83. VibrantCare has been damaged by Deol's breach of her fiduciary duties, caused by Golden Bear, and seeks actual, incidental, punitive, compensatory, and consequential damages based on Golden Bear's conduct in an amount to be determined at trial.

## COUNT V

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

84. VibrantCare hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 46.

85. The Confidentiality Agreement between VibrantCare and Deol was a valid and enforceable contract.

86. On information and belief, Golden Bear was aware of Deol's Confidentiality Agreement with VibrantCare because Deol disclosed the existence of the Confidentiality Agreement to Golden Bear during the hiring process.

87. On information and belief, Golden Bear encouraged Deol to breach the Confidentiality Agreement, and use confidential (but not trade secret) information belonging to VibrantCare for the benefit of Golden Bear.

88. At Golden Bear's behest, Deol breached the Confidentiality Agreement by disclosing and using VibrantCare's confidential information for the benefit of Golden Bear, as described herein.

89. Golden Bear knew that encouraging Deol to use VibrantCare's confidential information made it such that disruption of Deol's Confidentiality Agreement was substantially certain to occur.

90. As a result of Deol's breach of the Confidentiality Agreement, caused by Golden Bear's actions, VibrantCare has been damaged in the form of lost goodwill, reputation, and legitimate business interests.

91. VibrantCare has been damaged, and seeks actual, incidental, punitive, compensatory, and consequential damages based on Deol's conduct in an amount to be determined at trial.

## JURY TRIAL DEMAND

92. VibrantCare demands this action be determined by trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, VibrantCare seeks judgment in its favor and an Order against Golden Bear that grants the following relief:

A. Enjoins Golden Bear, and all those in active concert or participation with it, from using, disclosing, or otherwise misappropriating VibrantCare's confidential and trade secret information;

B. Awards VibrantCare actual, incidental, compensatory, and consequential damages to be proven at trial;

C. Awards VibrantCare exemplary or punitive damages in an amount to be proven at trial due to Golden Bear's willful and malicious activities;

D. Awards VibrantCare its reasonable attorneys' fees and costs in bringing this action as provided for in the CUTSA and DTSA; and

E. Awards VibrantCare such further relief as the Court deems necessary and just.

Dated: February 7, 2023

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Geoffrey C. Westbrook*
    Geoffrey C. Westbrook
    Jeffrey A. Nordlander

Attorneys for Plaintiff
VIBRANTCARE REHABILITATION, INC.